IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MERIDIAN OHC PARTNERS, LP, Derivatively on Behalf of CYANOTECH CORPORATION, <br><br> Plaintiff, <br><br> vs. <br><br> MICHAEL A. DAVIS; GERALD R. CYSEWSKI, NANCY E. KATZ, WALTER B. MENZEL, DAVID M. MULDER, and DAVID L. VIED, <br><br> Defendants, <br><br> CYANOTECH CORPORATION, a Nevada corporation, <br><br> Nominal Defendant. | CIVIL NO. 19-00536 JAO-WRP <br><br> ORDER GRANTING NOMINAL DEFENDANT CYANOTECH CORPORATION'S MOTION TO DISMISS PLAINTIFF'S VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT |

**ORDER GRANTING NOMINAL DEFENDANT CYANOTECH CORPORATION'S MOTION TO DISMISS PLAINTIFF'S VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

This putative shareholders' derivative action arises from the alleged

improper conduct of Defendant Michael A. Davis ("Davis"), Nominal Defendant

Cyanotech Corporation's ("Cyanotech") largest shareholder and Chairman of the

Board of Directors ("Board").  Specifically, Plaintiff Meridian OHC Partners, LP

("Plaintiff") on behalf of Cyanotech, alleges that Davis engaged in a scheme to

wrest control of Cyanotech to the detriment of Cyanotech and its shareholders, and that the Board's Directors—Defendants Gerald R. Cysewski ("Cysewski"), Nancy E. Katz ("Katz"), Walter B. Menzel ("Menzel"), David M. Mulder ("Mulder"), and David L. Vied ("Vied") (collectively, "Director Defendants")—participated in that scheme or at the very least failed to control Davis.  Cyanotech moves for dismissal because issue preclusion bars Plaintiff from relitigating derivative standing and Plaintiff fails to establish derivative standing to proceed on Cyanotech's behalf.[1] The Director Defendants seek dismissal for lack of personal jurisdiction, failure to state a claim, and on statute of limitations grounds.[2]  Davis moves to dismiss for failure to state a claim and on the basis that Plaintiff's claims are barred by the statute of limitations and res judicata (claim preclusion).  The Court GRANTS Cyanotech's Motion and deems moot Davis' and the Director Defendants' motions for the reasons set forth below.

## BACKGROUND

Cyanotech manufactures and distributes microalgae products and 100% of sales are comprised of Hawaiian BioAstin and Hawaiian Spirulina Pacifica products.  Compl. ¶ 1.  This case is the latest in a series of actions undertaken by Plaintiff, Cyanotech's third-largest shareholder, to challenge Davis' conduct.

---

[1]  The Director Defendants join in Cyanotech's Motion.

[2]  Davis joins in the Director Defendants' personal jurisdiction argument.

Plaintiff alleges that despite his position as Cyanotech's Board Chairman and largest shareholder, for years, Davis improperly filed Schedule 13Gs—the "passive" investors form—with the Securities Exchange Commission ("SEC"). Compl. ¶ 45.  According to Plaintiff, following Davis' appointment as Chairman of the Board, he and the Rudolf Steiner Foundation, Inc., dba RSF Social Finance ("RSF") worked in concert to surreptitiously gain a controlling share of Cyanotech, which involved alienating other shareholders who might obtain shares to challenge his control.  *See id.* ¶¶ 45, 52–55.

As part of this scheme, RSF acquired shareholder VitaeLab AS's ("VitaeLab") shares (9.7% of Cyanotech's common stock).  *Id.* ¶¶ 3, 47–48.  Davis learned about VitaeLab's desire to sell its shares through then-CEO Brent Bailey ("Bailey") but did not discuss this information with the Board.  *Id.* ¶ 46.  Davis realized nearly $2 million in profit from the inside information and subsequent purchase of VitaeLab's shares.  *Id.* ¶ 49.

Plaintiff alleges that Davis orchestrated the termination of multiple executives since 2010—CEO Andrew Jacobson in 2010; Bailey in 2016; COO Gerard Watts in November 2018; CFO Jole Deal in January 2019; and CEO Mawae Morton in April 2019—in an effort to inhibit Cyanotech's growth and restrain performance, maintain control, and enrich himself.  *Id.* ¶¶ 58–74.

I.      Demand Letter to the Board

Plaintiff sent Ralph Carlton, Cysewski, Menzel, and Vied a letter dated May 6, 2016 ("demand letter"), outlining Davis' alleged improper conduct and requesting "immediate and decisive action" by (1) removing Davis from the Board; (2) replacing corporate counsel; and (3) adding new experienced board members, offering one or more of its principals to join the Board.  ECF No. 40-5 at 7–8. Plaintiff accused Davis of:  (1) violating disclosure requirements of federal securities laws; (2) engaging in a scheme with RSF to obtain a controlling interest in stock; (3) controlling who joins and is removed from the Board; (4) calling and conducting board meetings without providing notice to Cysewski and Bailey; (5) replacing corporate counsel within his personal legal counsel; and (6) withholding approved executive bonuses for the fiscal year 2015.  ECF No. 40-5 at 2–7.

In response, the Board created a Special Committee of independent directors to investigate the allegations in the demand letter.  ECF No. 40-13.  The Special Committee retained special outside legal counsel to assist with the investigation. *Id.*  After four months of investigation, the Special Committee determined that it would not be in the best interests of Cyanotech or the shareholders to take the actions Plaintiff requested in the demand letter, or to pursue the claims (or any related claims) asserted by Plaintiff in a lawsuit filed on May 24, 2016 in the United States District Court for the District of Nevada ("Nevada action"), during

4

the pendency of the investigation.  ECF Nos. 40-14, 40-17.  Following the Special

Committee's presentation of its analysis and reasons for its recommendation to the

Board, the Board adopted the recommendation and passed a resolution declining to

pursue the requested actions, thereby formally rejecting Plaintiff's demand.  ECF

No. 40-17 at 2.

II.    <u>Nevada Action</u>

Eighteen days after it presented the demand letter, Plaintiff initiated the

Nevada action against Cyanotech, Davis, and RSF.  ECF No. 40-6.  Plaintiff

alleged—and continued to allege in subsequent amendments to the complaint—

that Davis exercised substantial control over Cyanotech by orchestrating the

termination of multiple executives because of their efforts to act for the benefit of

shareholders instead of Davis' interests; replacing Cyanotech's law firm with one

that represents Davis and entities he controls; regularly calling Board meetings

without providing notice to all directors; recruiting Vied, whose executive

recruiting firm was retained to recruit Bailey's successor; and changing

Cyanotech's strategy and operating plan, job responsibilities, and reporting.  *Id.* ¶¶

41–46, 52; ECF No. 40-4 ¶ 32; ECF No. 40-10 ¶ 14; ECF No. 40-11 ¶ 22.

On September 19, 2016, Plaintiff filed a first amended complaint, asserting

claims for (1) declaratory and injunctive relief under the Securities Exchange Act

of 1934 based on Davis' failure to file a Schedule 13D because he owns greater

than 5% of the shares of Cyanotech and because he and RSF constitute a "group" that has acquired beneficial ownership; (2) injunctive relief against Davis and RSF on behalf of Cyanotech due to Davis and RSF's failure to disclose group status and control intent, failure to file Schedule 13D reports, and depriving Cyanotech and shareholders of material information; and (3) breach of fiduciary duties on behalf of Cyanotech against Davis.[3]  ECF No. 40-4.  Plaintiff repeatedly referenced the demand letter and accused Cyanotech of refusing to take corrective action.  *See id.*

Cyanotech moved to dismiss the derivative claims in the first amended complaint on the basis that Plaintiff lacked standing to assert derivative claims under a demand refusal theory, i.e., that Plaintiff demanded that the Board pursue the corporate claim and it wrongfully refused to do so.  ECF No. 40-7.  The Nevada district court granted the motion and granted Plaintiff leave to amend the derivative claims:

> I'm going to address the Second and Third Claim for Relief.  Both are derivative claims so I'm going to address those two together.  I'm granting the motion based on the demand— the wrongfully refused demand theory not being sufficiently pled here.  The facts to support that theory are, for the most part, pled on page 12 of the Amended Complaint in paragraphs 35 through 38.  I've looked at those carefully.  They incorporate exhibits which includes the May 6th letter and the—I could even go outside to look at the 8-K that's identified as paragraph 37.  But, even when I look at all of that and then I look at paragraph 38

---

[3]  The original complaint also included claims for (1) declaratory and injunctive relief under the Nevada Acquisitions of Controlling Interest Statutes against Davis and RSF and (2) Section 10(b)(5) securities fraud against Davis.  ECF No. 40-6.

that says, because the Board has refused Meridian's demand for action, Meridian is bringing this derivative claim.

And, as hard as I try to find the reasons why the decisions made by the Board to deny this were wrongful, I can't find that. The best I can conclude based on the allegations here is that there's a difference of opinion; there's a disagreement on approach. But I'm not just seeing wrongful refusal suggested by these facts. So, for that reason, I am dismissing the Second and Third Claim for relief because there isn't a sufficiently pled demand wrongfully refused. I'm going to do so with leave to amend so that you can articulate it better because I think that in some of your arguments you definitely articulated it far more than it is stated here in the Amended Complaint, which I understand. But we don't have it as pled. So it makes it very difficult for me to determine if there's a plausible claim here which would give you standing to bring the derivative claim.

ECF No. 40-9 at 46:21–47:21.

Plaintiff twice amended its complaint following the dismissal of the derivative claims, but never reasserted those claims. ECF Nos. 40-10, 40-11. Instead, it pursued the non-derivative claim against Davis and RSF, i.e., their failure to acknowledge that they were a "group" in their Schedules 13D. *See id.*

In October 2018, the Nevada district judge approved a joint stipulation of dismissal of the action with prejudice. ECF No. 40-12.

III.   <u>Present Action</u>

One year later, Plaintiff commenced this shareholder derivative action to redress past and future injuries suffered as a result of Defendants' breaches of fiduciary duty, abuse of control, gross mismanagement, and waste of corporate

7

assets.  Compl. ¶ 80.  Plaintiff alleges that it has not made a demand to the Board to commence this action because it would be futile.[4]  *Id.* ¶ 82.

Plaintiff accuses the Director Defendants of (1) allowing Davis to secretly gain control of Cyanotech through RSF's acquisition of additional stock for Davis' benefit, which has subjected Cyanotech to lawsuits and whistleblower complaints filed with the Internal Revenue Service ("IRS") and SEC; (2) participating in Davis' intentional effort to alienate significant shareholders by inhibiting Cyanotech's growth and performance; (3) violating the law, approving of the same, or looking the other way, none of which constitutes legitimate business conduct. *Id.* ¶¶ 83–85.

Plaintiff asserts the following claims:  (1) breach of fiduciary duty (Count I); (2) abuse of control (Count II); (3) gross mismanagement (Count III); and (4) waste of corporate assets (Count IV).  Plaintiff prays for a directive that Cyanotech take all necessary actions to reform corporate governance and internal procedures to prevent the damaging events that are the subject of this lawsuit from happening again; injunctive relief; restitution; and costs.  *Id.* at 68.

---

[4]  Plaintiff also claims demand futility with respect to Cyanotech shareholders because it is a publicly traded company with 5.8 million outstanding shares and hundreds or thousands of shareholders; it would be impossible to identify all shareholders and obtain their contact information; and undertaking such an effort would cause Plaintiff to incur substantial expenses.  Compl. ¶ 93.

LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged."  *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)) (alteration in original).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted).  Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice.  *See Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

9

defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The tenet that the court must accept as true all of the allegations contained in the complaint does not apply to legal conclusions. *See id.* As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)) (some alterations in original). If dismissal is ordered, the plaintiff should be granted leave to amend unless it is clear that the claims could not be saved by amendment. *See Swartz v. KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007) (citation omitted).

<u>DISCUSSION</u>

Defendants advance multiple bases for dismissal, certain of which are threshold matters. Because courts "may choose among threshold grounds for denying audience to a case on the merits," *Potter v. Hughes*, 546 F.3d 1051, 1055 (9th Cir. 2008) (citations omitted), the Court first addresses Cyanotech's contention that this action should be dismissed because Plaintiff is precluded from reasserting derivative standing and/or derivative standing is lacking. Unless Plaintiff satisfies demand pleading requirements, pursuant to FRCP 23.1 and applicable state law, no lawsuit exists over which to exercise jurisdiction. *See id.*

1055–56 (characterizing demand pleading requirements as an issue of statutory standing and finding the issue "logically antecedent" to address even before Article III issues (citations omitted)).

I.      Judicial Notice

As a preliminary matter, the Court addresses Cyanotech's request for judicial notice.  Cyanotech asks the Court to consider Exhibits A through M, attached to the Declaration of Stephen P. Blake, which are incorporated by reference in the Complaint, subject to judicial notice, or both.  Pursuant to Federal Rule of Evidence ("FRE") 201, courts can take judicial notice of facts not subject to reasonable dispute because they are generally known or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  A court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo*, Inc., 971 F.2d 244, 248 (9th Cir. 1992).

Under Rule 12(b)(6), review is ordinarily limited to the contents of the complaint.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Sprewell*, 266 F.3d at 988.  A 12(b)(6) motion is treated as a motion for summary judgment if matters outside the pleadings are considered.  *See Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).  However, courts may "consider certain materials—

11

documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). In addition, courts may consider evidence necessarily relied upon by the complaint if "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder*, 450 F.3d at 448 (citations omitted).

The Court finds that taking judicial notice of the exhibits attached to the Motion is appropriate because they are referenced in the Complaint, are from the Nevada action, are publicly available, and/or can be readily determined from accurate sources. The Court therefore takes judicial notice of the documents without converting Cyanotech's Motion into a motion for summary judgment.

## II.     Derivative Standing

Ordinarily, "a corporation is run by its management, and the corporation itself has the right to make claims." *Quinn v. Anvil Corp.*, 620 F.3d 1005, 1012 (9th Cir. 2010) (citation omitted); *Potter*, 546 F.3d at 1058 (identifying as a "basic principle of corporate governance that the board of directors, and not individual shareholders, manages the affairs of the corporation" (citation omitted)). "A derivative action is an extraordinary process where courts permit 'a shareholder to

step into the corporation's shoes and to seek in its right the restitution he could not demand in his own.'"  *Quinn*, 620 F.3d at 1012 (citation omitted).  Because a derivative shareholder action is a "remedy of last resort," *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (citation omitted), "strict compliance with Rule 23.1 and the applicable substantive law is necessary before a derivative suit can wrest control of an issue from the board of directors."  *Potter*, 546 F.3d at 1058.

FRCP 23.1(a) "applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce."  Fed. R. Civ. P. 23.1(a).  To establish standing in a derivative action, the complaint must "state with particularity:  (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort."  Fed. R. Civ. P. 23.1(b)(3).  That is, FRCP 23.1 requires a shareholder to "either demand action from the corporation's directors before filing a shareholder derivative suit, or plead with particularity the reasons why such demand would have been futile."  *Arduini v. Hart*, 774 F.3d 622, 628 (9th Cir. 2014) (footnote omitted).  "This demand requirement implements the basic principle of corporate governance that the decisions of a corporation—including

the decision to initiate litigation—should be made by the board of directors or the majority of shareholders."  *Towers v. Iger*, 912 F.3d 523, 528 (9th Cir. 2018) (internal quotation marks and citations omitted).

FRCP 23.1 supplies the applicable pleading standard for evaluating demand futility while substantive law from the state of incorporation of the subject corporate entity governs whether a demand is actually futile.  *See id.* n.4 (citations omitted).  Because Cyanotech is a Nevada corporation, Compl. ¶ 18, Nevada law governs demand futility.  *See Towers*, 912 F.3d at 528 n.4; *Arduini*, 774 F.3d at 628 ("A court looks to the law of the state of incorporation to determine when demand would be futile." (citing *Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014)).  As to demand futility, Nevada courts look to Delaware law.  *See Arduini*, 774 F.3d at 628 (citing *Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1179–84 (Nev. 2006), *abrogated on other grounds by Chur v. Eighth Judicial Dist. Court*, 458 P.3d 336 (Nev. 2020)).

Pursuant to Nevada corporate law, a corporation's "board of directors has full control over the affairs of the corporation."  Nev. Rev. Stat. § 78.120(1).  The management of such affairs includes the decision to take legal action on the corporation's behalf.  *See Shoen*, 137 P.3d at 1179 (footnote omitted).  If a board fails to act appropriately, however, "individual shareholders may file a suit in equity to enforce the corporation's rights."  *Id.*  These derivative suits "allow

14

shareholders to 'compel the corporation to sue' and to thereby pursue litigation on the corporation's behalf against the corporation's board of directors and officers, in addition to third parties." *Id.* (footnote omitted); *see Arduini*, 774 F.3d at 628 (citation omitted).  Given that the management of corporate affairs rests with the board, as a prerequisite to suit, a shareholder must make a demand on the board or the other shareholders, if necessary.[5]  *See Shoen*, 137 P.3d at 1179 (footnote omitted); *Arduini*, 774 F.3d at 628 (citations omitted).

Cyanotech first argues that Plaintiff is precluded from relitigating its derivative standing because the issue was litigated in the Nevada action and the Nevada district court concluded that Plaintiff lacked standing.  Although the Nevada action in fact addressed whether Plaintiff has derivative standing to bring suit on behalf of Cyanotech, the dispositive issue here is whether Plaintiff can assert demand futility as a basis for derivative standing when it presented the Board with a demand.  The Court concludes that it cannot.

---

[5]  Like FRCP 23.1, Nevada Rule of Civil Procedure 23.1 imposes heightened pleading standards in shareholder derivative suits, requiring a derivative complaint to "state, with particularity, the demand for corrective action that the shareholder made on the board of directors (and, possibly, other shareholders) and why he failed to obtain such action, or his reasons for not making a demand." *Shoen*, 137 P.3d at 1179 (footnote omitted).

A.    <u>Plaintiff Cannot Allege Demand Futility</u>

Plaintiff attempts to distinguish this action from the Nevada action, arguing that the Nevada action concerned failures to file the required forms, while the issue here is whether a demand on the Board would be futile.  In so arguing, Plaintiff conflates the present claims with derivative standing.  The underlying basis for this litigation is not demand futility;[6] it is, as it was in the Nevada action, Davis' long-standing scheme with RSF and inappropriate control of Cyanotech to the detriment of shareholders, which the Director Defendants have assisted or failed to stop. Despite Plaintiff's attempt to distinguish this action from the Nevada action and the demand, Davis' efforts to exert control over Cyanotech is central to all.

Because Plaintiff exclusively bases its derivative standing on a theory of demand futility, the action fails as a matter of law.  Delaware courts, from which Nevada courts seek guidance, "have repeatedly held that a shareholder concedes that a demand is not futile by submitting a demand to the board."  *Simmonds v. Credit Suisse Sec. (USA) LLC*, 638 F.3d 1072, 1094 (9th Cir. 2011), *vacated on other grounds*, 566 U.S. 221 (2012).  Indeed, "'Delaware law could hardly be clearer' in holding that shareholders may not invoke the futility exception after submitting a demand to the board."  *Id.* (citations omitted); *see Rales v. Blasband*, 634 A.2d 927, 935 n.12 (Del. 1993) ("Where a demand has actually been made, the

---

[6]  Demand futility is Plaintiff's basis for asserting derivative claims.

stockholder making the demand concedes the independence and disinterestedness of a majority of the board to respond." (citations omitted)); *Spiegel v. Buntrock*, 571 A.2d 767, 775 (Del. 1990) ("[T]his Court has held that by making a demand, a shareholder thereby makes his original contention, that demand was excused, moot." (citation omitted)); *Quantum Tech. Partners II, L.P. v. Altman Browning & Co.*, 436 F. App'x 792, 793 (9th Cir. 2011) (holding that the plaintiff could not claim demand futility having made a demand on the company's board of directors (citing *Spiegel*, 571 A.2d at 775)).

Plaintiff nevertheless posits that it is not barred from arguing demand futility now because this action concerns entirely different issues than those presented in the demand letter.  According to Plaintiff's constrained reading of the demand letter, the demand was limited to Davis' failure to file the appropriate Schedule 13D disclosures with the SEC.  But Plaintiff also accused Davis of:  (1) engaging in a scheme with RSF to obtain a controlling interest in stock; (2) controlling who joins and is removed from the Board; (3) calling and conducting board meetings without providing notice to Bailey and Cysewski; (4) replacing corporate counsel within his personal legal counsel; and (5) withholding approved executive bonuses for the fiscal year 2015.  Cyanotech Mot., Ex. A-1 at 2–7.  And it continues to raise some of the same allegations in this lawsuit.  So, as before, the premise of this action is Davis' wrongful efforts to control Cyanotech.  Plaintiff's core allegations

17

do not fall outside the scope of the demand letter merely because Plaintiff now asserts claims against the Director Defendants and limited allegations about conduct occurring after the demand letter (such as stock depression and the resignation/termination of multiple Cyanotech executives).  Interestingly, for the purposes of derivative standing, Plaintiff insists that it can assert demand futility here because the issues are new and distinguishable, yet for the purposes of the substantive claims, it proffers that the demand letter provided notice to the Director Defendants of Davis' improper conduct.  Plaintiff cannot have it both ways.

Plaintiff further argues that this action pertains exclusively to Davis' post-2016 transgressions.  The Court finds this argument disingenuous given the 69-page Complaint's disproportionate focus on Davis' pre-2016 conduct.  At the hearing, Plaintiff's counsel explained that the pre-2016 allegations are necessary to show a pattern.  This may be so, but the allegations clearly demonstrate that the claims here are not solely based on post-2016 conduct.  The central issue underlying the demand letter, the Nevada action, and this action, is Davis' purported misconduct dating back to 2002 that has caused and continues to cause harm to Cyanotech and its shareholders, notwithstanding Plaintiff's effort to re-characterize the dispute in its Opposition.

Plaintiff cites one case for the proposition that a demand does not concede board "independence 'conclusively' and *in futuro* for all purposes relevant to the

demand."  Opp'n, ECF No. 48 at 24 (quoting *Scattered Corp. v. Chicago Stock Exch., Inc.*, 701 A.2d 70, 74–75 (Del. 1997), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)).  But that case involved demand refusal, not demand futility.  While the court there explained that making a demand does not waive a shareholder's "right to claim that demand has been wrongfully refused," it also recognized the general rule that "[i]f the stockholders make a demand . . . they are deemed to have waived any claim they might otherwise have had that the board cannot independently act on the demand."  *Scattered Corp.*, 701 A.2d at 74.  And "[i]f a demand is made, the stockholder has spent one—but only one—'arrow' in the 'quiver.'  The spent 'arrow' is the right to claim that demand is excused."  *Id.* (citation omitted).

This authority makes clear that where, as here, a shareholder made a demand on the board, it cannot claim demand futility.  Thus, the fact that a shareholder may not be forever foreclosed from reasserting a claim for *demand refusal* does not save Plaintiff's *demand futility* allegations.  *See*, *e.g.*, *Treeby v. Aymond*, No. Civ. A. 00-1377, 2000 WL 869502, at *7 n.17 (E.D. La. June 28, 2000) (summarizing prior decision that a formal demand on the board precluded a contention that demand was futile and explanation "that once demand is made and it was in this case, absent wrongful refusal, the stockholder's ability to initiate a derivative suit is terminated"), *aff'd*, 251 F.3d 156 (5th Cir. 2001).  Indeed, it is contradictory for

19

Plaintiff to argue in this action that demand would be futile when it already presented a demand and asserted allegations about the demand in the Nevada action.[7]  Because Plaintiff is precluded from invoking demand futility, it has no basis to bring this derivative action.

Insofar as Plaintiff is barred from asserting demand futility, having made a demand on the Board, Cyanotech's Motion is GRANTED, and this action is DISMISSED.  Amendment would be futile because Plaintiff's sole basis for derivative standing is demand futility.  *See Swartz*, 476 F.3d at 760.  Without derivative standing, no lawsuit exists.  *See Potter*, 546 F.3d at 1055.  Given the dismissal of the action, Davis' Motion to Dismiss and the Director Defendants' Motion to Dismiss are MOOT.[8]

## CONCLUSION

Based on the reasons stated herein, the Court GRANTS Cyanotech's Motion to Dismiss Plaintiff's Verified Shareholder Derivative Complaint, ECF No. 40, and

---

[7]  Circumstances might differ had Plaintiff asserted demand futility in the Nevada action, then made a demand and asserted demand refusal here.  The Nevada court gave Plaintiff an opportunity to amend its demand refusal allegations, but Plaintiff did not avail itself of the opportunity.  Cyanotech Mot., Exs. E–G.  In this action, Plaintiff continues to complain that the Board did not take adequate steps to stop Davis after receiving the demand letter.

[8]  Davis' and the Director Defendants' counsel agreed at the hearing that if Cyanotech's Motion is granted, the Court need not address Davis' or the Director Defendants' motions to dismiss.

DISMISSES this action.  In light of the dismissal of this action, the Director

Defendants' Motion to Dismiss Plaintiff's Complaint and Davis' Motion to

Dismiss Plaintiff's Verified Shareholder Derivative Complaint are MOOT.  ECF

Nos. 41, 43.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, July 15, 2020.

Jill A. Otake
United States District Judge

CV 19-00536 JAO-WRP; *Meridian OHC Partners, LP v. Davis, et al.*; ORDER GRANTING NOMINAL DEFENDANT CYANOTECH CORPORATION'S MOTION TO DISMISS PLAINTIFF'S VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT